TONEY *VS.* MOORE.

1. Where A, being the agent of B, contracted verbally with C, for the sale of a lot of land, owned by B, and which A was empowered to sell; and C went into possesson, and so continued for several years; and in the mean time, A procured a title for the lot, to himself—and the lot was sold at sheriff's sale, as A's estate; Chancery (under the facts,) presumed a payment of the purchase money, and decreed in favor of B, and compelled A to make a title to C; and cancelled the deed from the sheriff to a purchaser of the lot.
2. The evidence of a witness, in a chancery cause, will not prevail against an allegation in a bill, which is positively admitted in the answer.

Writ of error from a decree in chancery.

William H. Moore, by bill in Chancery, filed in Franklin Circuit Court, set forth—that some time in the year 1825, he being advised, that one Peyton Palmer, being the agent and trustee of one Maxwell, held the bond of Maxwell, to Godley, conditioned for the title deeds of a lot or parcel of land, lying in the town of Tuscumbia; and understanding that the legal title to said lot was in said Godley, and that said Palmer was fully authorised and empowered to sell the same—he, the complainant, entered into a verbal contract with the said Palmer, for the purchase of the said lot, for the sum and price of three hundred and twenty-five dollars—which sum the said complainant paid over to Palmer; and forthwith commenced improving the said lot: that he had continued to improve the same, and had erected thereon, a valuable two-story brick tenement, calculated as a store house, at a large expense; of all which said Godley had due notice, before any title

passed from him, for the lot in question—he being notified, not to make a title to said lot, to Palmer, or any other person, but the complainant. That after complainant had nearly completed the said improvements, the said Palmer proposed to become a partner of complainant, in said lot and building—which complainant agreed to, provided the said Palmer paid half of the money vested, and of expenses : but with which proposition Palmer never had complied. That some time thereafter, and while the work upon said lot was progressing, the complainant visited the city of New Orleans, where he was so long detained, that it was generally believed, he was dead. That whilst thus absent, said Palmer bargained with one William Marsh, to put a rough coat of plastering on said house, which was accordingly done. That on complainant's return from New Orleans, he found, that in his absence, said Palmer had taken possession of the lot and premises, where he had placed one Stroup, as a tenant. Possession having, however, been immediately given up, by Stroup, the said Palmer delivered the keys of said house to complainant, and sent the plasterer to him, for the payment of his bill. The bill charged, that of all these facts the said Godley, had due notice ; and that he promised the complainant, not to make the title for the lot to Palmer ; but expressed a desire, as he had learned that complainant and the said Palmer were in copartnership,—to make a deed to them, as such, jointly : which partnership, as alleged, never existed : nevertheless, the said Godley, after the notice to him, and his promises to the contrary, did execute a conveyance of the said lot, to Palmer. That Palmer,

being entirely insolvent, and having failed in his frequent promises to the complainant, to execute to him, a sufficient title for the said lot; had made an agreement with the sheriff, whereby executions, then in the hands of said sheriff, against said Palmer, had been levied on the said lot; and the same sold under them, by said sheriff, to Toney, the defendant—notwithstanding that the said complainant, at the time of said sale, proclaimed the situation of the said lot; and expressly forbid the sale. That the sheriff had, in pursuance of the said sale, executed a deed therefor; and that the said Toney had been induced to purchase the said lot, by the advice and encouragement of one Petit, the deputy sheriff. The bill also set forth, that one of the executions, in the hands of the sheriff, at the time of said sale, had issued upon a judgment rendered against the said Palmer, for carpenter's work, performed on the said house. That some time thereafter, the said Toney had commenced suit and obtained judgment against the complainant for the said lot of land, and the premises: but that the title of complainant being purely equitable, he had endeavored unsuccessfully to defend the same.

The bill therefore prayed injunction, &c.

The answer of Toney, admitted the purchase of the lot at sheriff's sale; the suit, founded upon his deed, at law; and the recovery of judgment thereon, together with damages for the detention. It denied all knowledge of the statement in said bill, in relation to the title of the property; or whether Palmer was the agent of Maxwell: and generally denied all knowledge of any transactions connected with the

understanding between complainant, Palmer or God-ley. It admitted, that complainant had forbidden the sale of the lot, at the time purchased by respondent; but insisted, that the contract being verbal, was void, by the statute of frauds. Denied all concert with Petit, the deputy sheriff, as charged in the bill; all fraud; and demurred.

The answer of Peyton Palmer, stated, that he was the agent of Maxwell, authorised to sell said lot, named in the bill; and that as such agent, he contracted with complainant for the sale of one half thereof: but that complainant having failed to comply with the terms of such sale, the respondent became the purchaser himself, of the whole interest therein, from Maxwell; and paid him the whole amount of the purchase money, except about twenty dollars, for which said Maxwell held respondent's note. That previously he had received from said Maxwell, the original title bond, from Godley to Maxwell; and also, a power of attorney from Maxwell, to have the title made, as the said Palmer should direct: and that in pursuance of the said power, the said Godley made to the respondent, a title to the said lot. That the defendant having left the State, on his return, found the tenement named in claimant's bill, commenced: that he was not certain whether the proposition for the partnership, was made before or after the house was commenced; but admitted that such proposition was made by complainant, and agreed to. The defendant further answered, that complainant and himself, kept a store in Tuscumbia; and that the defendant furnished a large portion of the capital; and that a considerable

portion of the bills against said firm, remained un-
paid. That the defendant had confessed a judgment
in favor of one Barkly, for the amount of carpenter's
work, done on said house; and that to satisfy that
judgment, and a small debt due to Godley, the said
house had been sold, under execution, and purchased
by the defendant, Toney. Admitted that he consent-
ed to a sale of the house; and that he was anxious
it should be sold, to discharge the debts created by
its erection. Denied his insolvency; that he ever
promised to give up the title bond, to the complain-
ant; but confessed, that he, defendant, always de-
signed making complainant, a title to half of said
lot, when the purchase money should be paid: but
which had never been done. Admitted, that he put
the said Stroup in possession of the house; and that
the possession was afterwards obtained by complain-
ant, in the defendant's absence. Averred, that on an
adjustment of accounts, the complainant would be
found in his debt; and insisted on the statute of
frauds, &c.

Godley answered, that in February, 1824, he gave
to Maxwell, a bond, conditioned for title deeds, to the
lot of land mentioned in the bill: that he afterwards
agreed verbally, to sell to Moore and Palmer, two
feet of ground adjoining the said lot, for the purpose,
as understood by complainant, of jointly building a
brick tenement thereon. That subsequently Palmer
presented respondent with a power of attorney from
Maxwell, and demanded a title for the lot in his,
Palmer's, name: that having understood that the said
Moore and Palmer were partners, respondent at first
hesitated to make Palmer a title, in his own name;

and informed Moore thereof, stating that as Palmer held his bond, and a power of attorney from Maxwell, he would be compelled to make the title : that being also advised, legally, that there was no other proper course to be pursued—he did make Palmer the title.

Hugh Petit, a witness, stated, that he sold the house and lot under executions against Palmer: that Moore was in possession of the house; and that Palmer not only consented to the sale, but appeared solicitous about it. That Toney was present when Moore forbid the sale; and had notice of Moore's claim, before he paid the purchase money.

Richard Hines stated, that Moore contracted for the building, and superintended it; and made payments to the workmen. That Palmer was not concerned in any of the contracts, so made, nor was he considered in any manner responsible for the payment of the work.

William Hines stated, that Moore contracted for the erection of the building; and that he heard Palmer say, he was not in copartnership with Moore.

Jonathan Barkly stated, that he performed the carpenter's work, on the said house : and was paid through the proceeds of the sale thereof, by the sheriff. That Moore had been in possession several years : and that he did not consider Palmer liable to him for the price of the work done.

The Chancellor below decreed, that the deed made by the sheriff, to Toney, should be cancelled: that Palmer should convey the lot to Moore; and that the judgment at law against Moore, in favor of To-

ney, should be perpetually enjoined. Also, that complainant pay all costs.

*Ormond*, for the pl'ff in error—*Hopkins*, contra.

TAYLOR, J.—The bill in this case charges, that the complainant purchased the lot, which is the subject of litigation, of Palmer, who acted as the agent of Maxwell, in the sale, for the price of three hundred and twenty-five dollars, the whole of which had been paid. Palmer, in his answer, alleges that the complainant bargained for only half the lot, (I understand him to mean an undivided half,) for the price of one hundred and sixty-two and a half dollars, which had never been paid; and that he, (Palmer) had subsequently purchased the whole lot, and got a conveyance to himself.

The first question presented, is, whether the complainant had made the payment?

There is no direct evidence as to this matter; yet it is proved that from about the time of the purchase, the complainant had uninterrupted possession, to the time the bill was filed, which was several years; that after the deed was made to Palmer, he made no exertion to get possession of the property, except while the complainant was from home, on his trip to New Orleans, and while the report prevailed, that he was dead; and the possession then obtained, was relinquished immediately after the complainant returned home.

The circumstance that Palmer obtained a conveyance, does not prove any thing. Maxwell had never

4 s & p.                    45

obtained a deed—he held Godley's bond for a title, and when he gave a power of attorney to Palmer, to sell, he delivered the bond to him, and authorised Godley to make the title, pursuant to any directions which Palmer might give. He, therefore, had it perfectly in his power, to obtain a title, whether he had purchased or not.

The reason ascribed by Godley, in his answer, for making the title to Palmer was, that he held the title bond; and he has produced no proof of his ever having made a purchase. So far as Palmer is concerned, then, who only acted as an agent, in making the sale to Moore, there is sufficient evidence to show a compliance by Moore, with his contract; and there is nothing to sustain the allegation, by Palmer, which is not responsive to any allegation of the bill, that he had purchased the land.

It appears, by the bill, that Palmer proposed a union of interests to the complainant, which the complainant alleges he acceded to, on condition Palmer would pay half the purchase money, and expenses of building; which he never did, and the partnership did not take effect. Palmer alleges that the complainant proposed this partnership to him, but whether before the house was begun, or after, he is not confident; and that he acceded to the proposition.

Here is a strong circumstance, to show that Moore must have purchased the whole lot. All the parties and witnesses agree that the house covered the whole front of the lot. If Moore only purchased half, by what right, or upon what pretence, could he proceed to build upon the whole? And surely, if he had done so, the fact would have been of too extra-

ordinary a character, for Palmer to have forgotten whether his interest commenced before or after.

This conversation, and partial agreement for a partnership, doubtless gave rise to the idea which prevailed with some, that such a joint-interest existed. To one of the witnesses, however, Palmer positively declared, that there was no such joint interest. Moore made all the contracts for the building, and superintended it himself, entirely, although Palmer lived within a hundred and fifty yards, and was often near the house, in passing along the street.

His acts, while Moore was absent, prove his intention to commit a fraud; especially his contract for the plastering and course with the other workmen— particularly in soliciting Barclay to bring suit against him, with the evident intention of having the house levied on by execution and sold. All the circumstances, therefore, repel the idea of a joint interest.

But, it is contended, that the proof shows, Moore only claimed title to an undivided moiety of the lot, at the time of the sheriff's sale, at which Toney became the purchaser.

The bill charges expressly, that the complainant prohibited the sale, alleging that the whole property in the lot was his. And the answer of Toney, as expressly admits this to be true. The deposition of Petit, the deputy sheriff, who sold the property, states that the complainant frequently and openly claimed half the lot, &c.; but this can not prevail against a positive admission of the answer.

It has not been contended, that this is not a case in which Chancery can take jurisdiction, and decree a specific performance of the parol contract, provi-

ded the foregoing views are correct; and it would follow, upon the main points in the cause, that Moore is entitled to an affirmance of the decree. The proof, however, shows that Barclay, received, out of the money paid by Toney, the balance of the sum, which Moore owed him, for work done upon the house; but it does not appear what that sum was. It is but equitable that this sum should be refunded by Moore.

. The decree of the Circuit Court is, therefore, reversed, and the cause is remanded, that a reference may be made to the master, to ascertain the amount of the debt of Moore to Barclay, which was paid out of the proceeds of the sale, by the sheriff, to Toney, excluding all the costs of the suit of Barclay against Palmer, and those arising upon the execution and sale of the property : and that the Circuit Court may decree, that Moore shall pay this amount to Toney, at such time as *to that* Court shall seem right ; that, thereupon, the sheriff's deed to Toney, be delivered up, to be cancelled, and Palmer execute a conveyance to Moore, in fee simple : and that the judgment at law, recovered by Toney against Moore, except for the costs, be perpetually enjoined : that Moore pay the costs arising in the Circuit Court; and, in this case, as there is reason to believe the point on which the case is reversed was not made below, that each party pay half the costs of this Court.